MEMORANDUM *
Richard Allen Fabel appeals his convietion and sentence for participating in a Racketeer Influenced and Corrupt Organization (“RICO”), in violation of 18 U.S.C. § 1962(c), and a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). We have jurisdiction under 28 U.S.C. § 1291 and *934 affirm Fabel’s conviction, but vacate his sentence and remand for resentencing.
I.
Viewed in the light most favorable to the government, the evidence is sufficient to show Fabel committed the three racketeering acts underlying the RICO verdict. See 18 U.S.C. §§ 1961(1), (5); United States v. Fernandez, 388 F.3d 1199, 1221 (9th Cir.2004). First, the government proved Fabel sold a recustomized motorcycle, knowing the component containing the vehicle identification number (“VIN”) had been removed in order to conceal the motorcycle’s identity. The removal of the VIN violated state law, see Wash. Rev.Code § 46.12.300, and thus 18 U.S.C. § 2321(a). See 18 U.S.C. § 2321(b)(2); 18 U.S.C. § 511(b)(2)(C).
Second, the evidence shows Fabel “knowingly ... obtained]” money and methamphetamine from a victim on the threat of death. See Wash. Rev.Code § 9A.56.110. The victim had “possession of’ the property Fabel took from him and was therefore its “owner” under Washington Revised Code § 9A.56.010(9), which is sufficient to prove Fabel committed first-degree extortion. See id. §§ 9A.56.120, 9A.04.110(27)(j), 9A.56.020(l)(a).
Third, as Fabel concedes, the government proved he committed mail fraud by sending false motorcycle receipts through a “commercial interstate carrier.” See 18 U.S.C. § 1341. Construing the mail fraud jury instruction as constructively amending the fifth superseding indictment, and reviewing under the plain error standard, see United States v. Olano, 507 U.S. 725, 732-36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we see no prejudice because Fabel was informed of the government’s evidence of shipment via FedEx long before trial. Thus the error “did not seriously affect the fairness, integrity, or public reputation of the proceedings.” United States v. Jimenez-Borja, 378 F.3d 853, 858 (9th Cir.2004) (internal quotation and alterations omitted); see United States v. Cotton, 535 U.S. 625, 632-33, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).
Fabel does not contend there is insufficient evidence establishing the other elements of the RICO and RICO conspiracy charges. See Fernandez, 388 F.3d at 1221, 1230 (setting forth elements of offenses). We therefore affirm his conviction.
II.
Fabel also challenges the reasonableness of his sentence and several conditions of his supervised release. The district court correctly found, in calculating Fabel’s criminal history category, that Fabel and his co-conspirators committed acts in furtherance of the RICO enterprise that either occurred while Fabel was under judicial supervision or resulted in harm that continued through that period. See U.S.S.G. §§ 4Al.l(d), 4A1.2 cmt. 1, lB1.3(a)(l)(B), (3); see also United States v. Frega, 179 F.3d 793, 810 n. 21 (9th Cir.1999).
In calculating Fabel’s offense level, however, the district court clearly erred in finding that the extortion victim’s loss exceeded $10,000. See U.S.S.G. § 2B3.2(b)(2) (2007). The district court correctly determined, under Washington law, that the victim’s loss included the value of the methamphetamine, notwithstanding the “outlawed and contraband nature” of that property. See State v. Schoonover, 122 Wash. 562, 211 P. 756, 758 (1922). Nonetheless, the record fails to show the victim’s losses exceeded $10,000, given Baldwin’s testimony estimating his losses at “maybe $10,000” (apparently including both cash and methamphetamine). Supplemental Excerpts of Record (“SER”) 205; see also SER 180-204. This error *935 affected the calculation of Fabel’s Guidelines sentencing range, and requires remand. See Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007) (“[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.”); United States v. Carty, 520 F.3d 984, 993 (9th Cir.2008) (en banc) (“It would be procedural error for a district court to fail to calculate — or to calculate incorrectly — the Guidelines range.... ”).
The district court did not abuse its discretion in imposing a condition of supervised release requiring Fabel to abstain from alcohol. We have some concern about the district court’s statement that it “routinely” imposes an alcohol abstention condition “in these kinds of sentences,” but given the context we read the district court as having imposed the abstention condition as “part of an integrated rehabilitative scheme” for defendants who, like Fabel, have a history of drug abuse rather than alcohol abuse. United States v. Vega, 545 F.3d 743, 748 (9th Cir.2008) (internal quotation marks omitted); see id. at 747-48 (“[T]he alcohol abstention condition is reasonably related to the goal of furthering Vega’s rehabilitation. Vega has a well-documented history of drug abuse.... [I]t is hardly a secret that there is a tie between drug abuse and alcohol abuse.”) (internal quotation marks omitted). The condition was properly imposed only after individualized consideration of “ ‘the nature and circumstances of the offense and the history and characteristics of the defendant.’ ” United States v. Betts, 511 F.3d 872, 878 (9th Cir.2007) (quoting United States v. Weber, 451 F.3d 552, 557 (9th Cir.2006) (quoting 18 U.S.C. § 3553(a)(1))).
The district court also acted within its discretion with respect to the other conditions of supervised release. The requirement that Fabel participate in a substance abuse program and undergo treatment does not improperly delegate judicial authority, but merely delegates administrative details to a probation officer. See United States v. Stephens, 424 F.3d 876, 882 (9th Cir.2005).
Forbidding “contact with any gang members, or members of any outlaw motorcycle club” is not unconstitutionally vague or overbroad. The record shows that members of the Washington Nomads understand the term “outlaw motorcycle club” to refer to the Hells Angels and its rival organizations. See United States v. Ross, 476 F.3d 719, 722-23 (9th Cir.2007); see also Department of Justice Website, http://www.usdoj.gov/criminal/ganguniV about/omgangs.html (defining “Outlaw Motorcycle Gangs” as organizations such as the Bandidos, Black Pistons, Hells Angels, Mongols, Outlaws, Pagan’s and Vagos “whose members use their motorcycle clubs as conduits for criminal enterprises”). In this context, “gang” is naturally understood to refer to criminal enterprises similar to the Hells Angels and other outlaw motorcycle gangs. See United States v. Soltero, 510 F.3d 858, 866 (9th Cir.2007). We are “unpersuaded that the restrictions lack meaning” to Fabel. Ross, 476 F.3d 719 at 722. Because we construe the condition to prohibit only knowing association with “gang members[ ] or members of any outlaw motorcycle club,” the condition is not overbroad in its scope. See Vega, 545 F.3d at 750.
III.
We affirm Fabel’s conviction, vacate his sentence and remand for resentencing consistent with this memorandum. In doing so, we leave it to the district court’s discretion to consider new evidence as it deems appropriate. See United States v. Matthews, 278 F.3d 880, 885-86 (9th Cir.2002) (en banc).
*936 AFFIRMED in part, VACATED in part and REMANDED for resentencing.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.